IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-01612-DME-PAC

JERRY GRADY,

      Plaintiff,

v.

CAPTAIN EDMONDS,
DR. McLAUGHLIN,
NURSE TAYLOR,
LT. GILLESPI,
CASE MANAGER CATHY PFALZGRAPH,
P.A. ROBERTS,
P.A. WRIGGLEY,
WARDEN TONY CAROCHI, and
JOSEPH ORTIZ, Executive Director of DOC,

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

O. Edward Schlatter, United States Magistrate Judge

      This is a *pro se* prisoner civil rights action under 42 U.S.C. §1983.  Plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.  An October 2, 2006 Order of Reference referred this action to former United States Magistrate Judge Patricia A. Coan to conduct pretrial proceedings and to issue recommendations for rulings on dispositive motions.  Upon Magistrate Judge Coan's retirement, I assumed her caseload temporarily. The matter before me is Defendants' Motion to Dismiss [Doc. #17; filed December 4, 2006].  The motion is fully briefed and is ripe for disposition.

I.

Plaintiff Jerry Grady is incarcerated at the Buena Vista Correctional Facility ("BVCF").  (Compl. at 2)  Plaintiff suffered severe, permanent injuries to his feet after falling 45-feet in a work-related injury prior to his incarceration.  (*Id.* at 3; *see, also,* Final Order of Special Master in Civil Action No. 92-cv-00870-EWN-OES, *Montez v. Owens*, attached to Reply, at 4-5)  When plaintiff entered the BVCF in December 2003, he originally received a "special project" work assignment, filling pepper shakers and placing napkins in paper cups in the dining room. (Compl., at 5, and Ex. F-2)  Plaintiff was allowed to sit down while performing his job duties.  (*Id.*)  Sometime after August 2004, defendant Captain Edmonds informed plaintiff that the administration was eliminating "special projects" work assignments, and that plaintiff was being re-assigned to a regular kitchen job.  (*Id.*)  According to plaintiff, Dr. McLaughlin changed the medical work restrictions in plaintiff's institutional file, which plaintiff had received at the Department of Corrections ("DOC") Diagnostic Center in Denver, at Captain Edmonds' request without examining plaintiff. (Compl. at 9; Plaintiff's Response brief, at 10 )

Plaintiff was required to carry heavy kitchen pots and pans across a "wet and greasy floor" as part of his kitchen assignment. (Compl., at 5)  When plaintiff told Captain Edmonds that his kitchen duties caused him extreme pain and violated his documented medical restrictions, Edmonds responded that "[your] restrictions are changed" and that plaintiff could "work [his] job or go to segregation." (*Id.*)  Plaintiff alleges that Captain Edmonds knew that plaintiff was disabled, but forced him to perform work that was beyond his physical capabilities and caused plaintiff severe pain.  (*Id.* at 8)

2

Sometime later, plaintiff fell and broke his toe while working in the kitchen. (Compl. at 6) Plaintiff states that P.A. Roberts refused to modify plaintiff's medical restrictions after and sent plaintiff back to work in the kitchen on crutches, where the floors were wet and slippery, three days after his injury. (*Id.* at 9)

Subsequently, plaintiff was transferred to the Buena Vista Minimum Center, where he was assigned to work in the kitchen. (Compl. at 6)  Plaintiff advised Lt. Gillespi, who is in charge of the kitchen, that he is in chronic pain from having to stand on his feet and serve inmates food. (*Id.*, and Exs. B1-B2)  Defendant Gillespi has observed plaintiff's disability, which is evidence from the way plaintiff walks, but she refuses to assign plaintiff other work.  (Compl. at 6)

Plaintiff alleges that his case manager, Ms. Pfalzgraff, did not bring plaintiff's disability or his medical restrictions to the attention of the BVCF job board so that plaintiff could be assigned to a job consistent with his abilities.  (Compl. at 9)

Plaintiff told P.A. Wriggley, a healthcare provider at the B.V.C.F., about his disability and his need for medical work restrictions, but she refused to help him.  (*Id.*)

On December 13, 2005, plaintiff notified Warden Carochi of the defendants' conduct in refusing to accommodate his medical restrictions by assigning to work in the kitchen, but the warden failed to take any corrective action.  (*Id.* at 10; Ex. G5) Plaintiff further alleges that the warden failed to properly train prison officials in assigning work to disabled prisoners.  (Compl., at 10)

Since mid-December 2005, plaintiff has worked in the kitchen from approximately 12:45 to 3:00 p.m. on his scheduled days.  (January 23, 1996 Response to Grievance by

3

Major David Linam, Ex. G2 to Compl.)   This arrangement was agreed to by plaintiff, the

Food Service department, and Major Brunell, and was reconfirmed with Lt. Gillespie during

a December 16, 2005 meeting with the plaintiff to resolve his Step I grievance.  (Compl,

Ex. G4) According to Major Linam, plaintiff is "assigned to sedentary duties that do not

require long periods of standing and he is not required to walk extensively on wet floors."

(Compl., Ex. G2)

Plaintiff's §1983 complaint asserts that the defendants acted with deliberate

indifference to his serious medical needs and subjected him to cruel and unusual

punishment, in violation of the Eighth Amendment, and deprived him of his Fourteenth

Amendment due process and equal protection rights.   Plaintiff seeks monetary relief

against the defendants.   Plaintiff also asks the court to order defendants to place his

current work restrictions in his institutional file and to order a competent physician to,

examine him and to assess his disabilities and work restrictions according to objective

medical standards. *See* Plaintiff's Answer to Reply [Doc. #36], filed February 26, 2007.

II.

Defendants move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure

to state a claim for relief.  I accept plaintiff's well-pleaded factual allegations as true in

considering defendants' Rule 12(b)(6) motion and resolve all reasonable inferences in

plaintiff's favor.  *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Bauchman v.*

*West High School*, 132 F.3d 542, 550 (10th Cir. 1997)(internal citations omitted). Dismissal

is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41,

4

45-46 (1957); *see, also, Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 586 (10th Cir. 1994); *Miller*, 948 F.2d at 1565.  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him the opportunity to amend." *Perkins v. Kan. Dept. of Corrections*, 165 F.3d 803, 806 (10th Cir.1999).

*Pro se* pleadings are to be construed liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  A *pro se* litigant should be given a reasonable opportunity to remedy defects in his pleadings if his factual allegations are close to stating a claim for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be granted."  *Id.*   A court will not construct legal theories which assume facts that have not been pleaded, *see Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), nor is the court obligated to "supply additional factual allegations to round out a plaintiff's complaint."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

III.

A.   ADA Claim

Defendants liberally construe plaintiff's *pro se* complaint to assert a claim under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12132 (prohibiting public entities from discriminating against qualified individuals with a disability in the availability of services, programs, or activities).[1] Section 12132 is applicable to state

---

[1] Plaintiff also indicates in his Response brief that he is asserting an ADA claim.  *See* Response brief, at 6.

prisons. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that state prisons are covered entities subject to suit under Title II of the ADA).

Defendants argue that plaintiff cannot maintain an ADA claim in this lawsuit because of his pending ADA claim in *Montez v. Owens*, 92-cv-00870-EWN-MEH, an ADA class action against the DOC. The underlying *Montez* lawsuit was settled in August 2003 when the parties entered into a Remedial Plan. Among other things, the Remedial Plan set up a procedure for individual inmates to file claims for damages which are to be resolved by a Special Master. *See* Remedial Plan, §XXXII, attached as Ex. A to Defendants' Motion to Dismiss.

Plaintiff's claim in the *Montez* suit was dismissed in January 2007 because plaintiff failed to allege facts to show that he was the victim of discrimination on or before August 27, 2003. *See* Final Order of Special Master, attached to Defendants' Reply Brief. The Special Master specifically advised plaintiff, however, that plaintiff had the right to pursue a separate lawsuit for any acts of discrimination that occurred after plaintiff's return to DOC custody in December 2003. *Id.* Accordingly, the disposition of plaintiff's claim in *Montez* has no bearing on his ADA claim in the instant lawsuit for alleged acts of discrimination occurring in 2004 and thereafter.

Plaintiff also asserts that the DOC is not complying with the requirements of the *Montez* lawsuit. To the extent plaintiff is asking the court to enforce the *Montez* Remedial Plan, the court has no authority to do so in the context of this case on behalf of Mr. Grady.

Although defendants do not urge any other grounds for dismissal of plaintiff's purported ADA claim at this time, I review the claim *sua sponte*, under 28 U.S.C.

6

§1915(e)(2)(B)(ii), to determine if the facts allege state a claim upon which relief can be granted.

Plaintiff does not state facts to show that he was assigned to perform medically inappropriate work *because* he is disabled. *See Jones v. Smith*, 109 Fed.Appx. 304, 309 (10th Cir. (Okla.) 2004)(unpublished)[2](dismissing prisoner's Title II ADA claim for failure to allege that his job assignment to medically inappropriate work was because of his disability, instead of some other reason such as spite, or the result of administrative incompetence). However, I liberally construe plaintiff's complaint as asserting an ADA claim for "failure to accommodate."

The ADA requires an employer "to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified" employee with a disability. *Bristol v. Bd. of County Comm'rs*, 312 F.3d 1213, 1217 (10th Cir.2002) (quotation omitted).

Assuming, without deciding, that plaintiff is a disabled person within the meaning of the ADA, the pleadings reflect that plaintiff made his physical limitations resulting from his disability known to prison staff and that eventually, the prison generally accommodated the plaintiff within his existing job.

Plaintiff alleges that after he complained about his work assignment and filed grievances, Major Brunell ensured that plaintiff's job duties were modified so that he worked no more than 2 - 2.25 hours per day, and performed sedentary duties that do not require long periods of standing or extensive walking on wet floors. (*See* January 23, 2006 grievance response by Major Linam, attached to Doc. #7, at 34) Plaintiff is still paid for a

---

[2]A copy of *Jones* is attached to the Recommendation.

full day of work. (*Id.*)  Plaintiff told Major Brunell, Captain Edmonds and Lt. Gillespi that

he was satisfied with the response to his grievance. (*See* December 19, 2005 Memo to

Plaintiff from Major Brunell; *see also* Plaintiff's Step III grievance, dated January 30, 2006,

acknowledging that the grievance response is "more precise" in "mapping out [his] hours

more closely to accurate"; Step II grievance, dated January 3, 2006, requesting that the

agreement regarding his work restrictions be documented in his file in case he was

transferred to another facility)

Notwithstanding, plaintiff alleges in his Response brief that he is still occasionally

assigned to work in the kitchen, where he is forced to stand for hours, risking a fall and

possible injury, on the wet slippery floor, and causing him unbearable pain.  (Response

brief, at 2)    Moreover, plaintiff's pleadings reflect that he has repeatedly requested

reassignment to a job that is consistent with his physical abilities.

Because it appears that issues pertaining to plaintiff's ADA failure-to accommodate

claim are ongoing and were not fully resolved in the grievance process, I decline to

dismiss that purported claim at this time.   Plaintiff should be allowed to amend his

complaint to assert his ADA claim as a separate claim for relief and to add the Department

of Corrections as a defendant.

B.    Official Capacity Claims

Plaintiff's constitutional claims against the defendants in their official capacities are

construed as claims against the State of Colorado. *See  Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  The defendants in their official capacities are immune from claims for

monetary and declaratory relief under the Eleventh Amendment.   *White v. State of*

*Colorado,* 82 F.3d 364, 366 (10th Cir. 1996); *see, also, Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989)(holding that state officials acting in their official capacities are not "persons" subject to suit under 42 U.S.C. §1983). Accordingly, plaintiff's claims for damages against the defendants in their official capacities should be dismissed.

C.     Personal Capacity Claims

The individual defendants have asserted the qualified immunity defense in response to plaintiff's constitutional claims against them in their individual capacities for monetary relief. Qualified immunity shields public officials from civil damages liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a public official raises the defense of qualified immunity, the plaintiff must first establish that the complained of conduct constitutes a violation of a constitutional or statutory right. *See Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003)(internal citation omitted). If plaintiff shows a constitutional violation, the court next determines whether the constitutional right was clearly established at the time of the defendant's allegedly unlawful conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff fails to satisfy either part of the bipartite inquiry, the court must grant the defendant qualified immunity. *Smith*, 339 F.3d at 1211.

1.     Eighth Amendment violation

Plaintiff claims that the defendants acted with deliberate indifference to his medical needs, and subjected him to cruel and unusual punishment, in violation of the Eighth Amendment. Specifically, plaintiff alleges that: Captain Edmonds and Lt. Gillespi knew that he was disabled, but forced him to work beyond his physical capabilities and refused

9

to assign him to medically appropriate work; that Dr. McLaughlin eliminated plaintiff's physical work restrictions at Captain Edmonds' directive, instead of performing an independent physical examination of plaintiff; that case manager Pfalzgraff refused to place plaintiff before the job board and request that plaintiff be assigned to different work; that P.A. Roberts refused to restrict plaintiff's work duties after plaintiff broke his toe and sent plaintiff back to work three days after his injury; that P.A. Wriggley knew about plaintiff's problems with his work restrictions, but refused to do anything about it; and, that Warden Carochi ignored plaintiff's letter complaining about the defendants' refusal to acknowledge his disability and to assign him to a prison job that would not cause him constant pain.

The Eighth Amendment is violated when a prison official acts with "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825,  828 (1994).  The Eighth Amendment also proscribes deliberate indifference by prison officials to an inmate's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   Deliberate indifference means that a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.   In the medical context, deliberate indifference means that prison medical staff knew of the inmate's serious medical need, but intentionally disregarded an excessive risk of harm to the inmate, or that prison guards or medical staff intentionally prevented the inmate from receiving prescribed treatment or intentionally delayed or denied him access to medical care. *Estelle,* 429 U.S. at 104-105; *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir.

10

2000); *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001). The medical condition complained of must be sufficiently serious, such that "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)(quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

An inmate's allegations that prison officials knowingly forced him to perform medically inappropriate work implicates the Eighth Amendment. *See Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989)(recognizing that prison official's decision to place inmate on work detail knowing that work will significantly aggravate inmate's serious physical ailment would constitute deliberate indifference to serious medical needs); *Williams v. Director, Arkansas Dep't of Corrections*, 148 F.3d 983, 987 (8th Cir. 1998)(prison officials violate the Eighth Amendment when they knowingly compel an inmate "to perform labor that is beyond an inmate's strength, dangerous to his life or health, or unduly painful")(internal citations omitted); *see, also, Jones*, 109 Fed.Appx. at 309, 2004 WL 2053280 at *4 (recognizing potential Eighth Amendment claim against prison officials who force an inmate to do medically inappropriate work, citing *Williams v. Director, Arkansas Dep't of Corrections*). However, an inmate's statement that he was "assigned jobs inconsistent with his prior work experience and physical abilities," without more, does not trigger constitutional protections. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

Construing plaintiff's allegations liberally and together, plaintiff alleges that

beginning sometime after August 2004, defendant Captain Edmonds assigned him to work in the prison kitchen performing duties that caused plaintiff to suffer unbearable pain because of the disfigurement in his feet.  Plaintiff further alleges that his disfigurement made it dangerous to walk on the wet, slippery floors in the kitchen, and that he fell and broke his toe while walking on the wet floors.  According to plaintiff, when he advised Captain Edmonds that his work restrictions were in his DOC file, Edmonds responded, "[Your] restrictions are changed.  You'll work your job or go to segregation."  (Compl., at 5) Plaintiff also alleges that Captain Edmonds told Dr. McLaughlin to lift plaintiff's existing work restrictions and not to issue new ones.  I recommend finding that plaintiff's allegations are sufficient to state an Eighth Amendment claim against Captain Edmonds.  *See Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985)(concluding that inmate's allegation that his assignment on the two-handed hoe squad continued after the time he had been medically restricted from using the injured arm for work stated a claim against prison official for violation of the Eighth Amendment).

Plaintiff alleges that Dr. McLaughlin is responsible for evaluating inmates for medical restrictions, but Dr. McLaughlin allowed Captain Edmonds to dictate that plaintiff would not have any medical restrictions, instead of examining the plaintiff and using his independent medical judgment.   Plaintiff states that when he told Dr. McLaughlin that other physicians had evaluated him before his incarceration and showed Dr. McLaughlin supporting medical documentation classifying him as disabled, Dr. McLaughlin responded that he "did not care" if plaintiff was disabled "on the streets"

12

because "what he said goes." (Compl. at 12-13)   Plaintiff alleges that  Dr. McLaughlin

has never looked at plaintiff's feet.  (*See* Step 3 Grievance attached to Doc. #7)

Plaintiff asserts that he has been compelled to perform work that causes him severe

pain and is potentially dangerous because there are no documented medical work

restrictions in his prison file.  (Response brief, at 3-4; Compl, at Ex. B-2)

I recommend finding that plaintiff's allegations are also sufficient to state an

Eighth Amendment claim against Dr. McLaughlin.  Although Dr. McLaughlin did not

refuse to provide plaintiff medical care, his alleged actions in disregarding plaintiff's

documented medical restrictions imposed by the DOC's Diagnostic Center and in

refusing to examine the plaintiff, after plaintiff reported his disfigurement and prior

medical history to Dr. McLaughlin and complained of significant work-related pain,

support a finding that Dr. McLaughlin was deliberately indifferent to plaintiff's severe

pain, a serious medical need.   *See Sealock*, 218 F.3d at 1211 (concluding that

inmate's severe pain caused by failure to provide medical treatment is serious medical

need satisfying objective element of the deliberate indifference test); *Wilson v. Seiter*,

501 U.S. 294, 297 (1991) (recognizing that the Eighth Amendment forbids the

"unnecessary and wanton infliction of pain").

I further recommend finding, however, that plaintiffs' allegations concerning

Gillespi, Pfalzgraff, Roberts and Wriggley are insufficient to create a reasonable

inference that those defendants acted with deliberate indifference to a serious risk of

harm to plaintiff's health or safety.

Plaintiff states that defendant Gillespi, who was in charge of the kitchen, knew

13

about plaintiff's disability by observing the plaintiff walk, and that she had the authority to change plaintiff's job assignment, but failed to do so.  (Compl., at 6,11)  However, plaintiff does not allege that Gillespi had any knowledge that Captain Edmonds allegedly ordered Dr. McLaughlin to remove plaintiff's existing work restrictions from plaintiff's institutional file, or that Captain Edmonds directed Dr. McLaughlin not to issue plaintiff any new work restrictions.  Instead, the pleaded facts show only that Gillespi continued plaintiff's work assignment in the kitchen because plaintiff did not have any documented medical restrictions compelling a different work assignment.  (*See, e.g.*, Compl., at Ex. B-1, Step I grievance response)  Accordingly, I recommend finding that plaintiff's facts are not sufficient to  support a reasonable inference that defendant Gillespi knew about and disregarded a serious risk of harm to the plaintiff when she refused to assign plaintiff work outside the kitchen.

Plaintiff's Eighth Amendment claim against plaintiff's case manager, defendant Pfalzgraph, fails for the same reasons.  Plaintiff alleges that Pfalzgraph failed to apprise the job board about plaintiff's disabilities and to facilitate plaintiff's re-assignment to a more appropriate job; however, there were no documented medical restrictions in plaintiff's institutional file.

Plaintiff alleges that P.A. Roberts sent him back to work on crutches three days after plaintiff fell and broke his toe without setting any work restrictions and that defendant Wriggley "refused to help [him]" obtain medical work restrictions; however, defendants Roberts and Wriggley are physician's assistants, who may reasonably defer to Dr. McLaughlin's superior medical judgment in not establishing any work

14

restrictions for the plaintiff.  Accordingly, plaintiff's Eighth Amendment claims against P.A.'s Roberts and Wriggley should also be dismissed.

      2.   <u>Due Process violation</u>

Plaintiff claims that defendants' conduct which allegedly violated his Eighth Amendment rights also deprived him of his Fourteenth Amendment due process rights.

Because the Eighth Amendment provides "an explicit textual source of constitutional protection against [the] particular . . . governmental behavior" about which plaintiff complains, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [his] claim." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *see, also, Calhoun v. Hargrove*, 312 F.3d 730, 735 (5th Cir. 2002)(dismissing prisoner's Fourteenth Amendment due process claims asserting that prison officials failed to adhere  to his medical and work restrictions because claims were a restatement of his Eighth Amendment claim and were more appropriately analyzed under Eighth Amendment standards, rather than under the rubric of substantive due process, citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

To the extent plaintiff could state a separate claim for violation of his procedural due process rights, plaintiff must show that he was deprived of a liberty or property interest to which he was entitled under the Constitution or state law.  *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir.1994).

"The Constitution does not create a property or liberty interest in prison employment," nor do the laws of the State of Colorado.  *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986).  Moreover, threatening to discipline an inmate or change an inmate's

prison classification for refusal to work a job assignment generally does not constitute a deprivation of liberty. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983), overruled, in part, on other grounds by *Sandin v. Conner*, 515 U.S. 472, 484 (1995)*; Meachum v. Fano*, 427 U.S. 215, 225 (1976)(holding that the Due Process Clause does not protect a prisoner against transfer to a more restrictive prison); *Sandin*, 515 U.S. at 485-87 (holding that the imposition of disciplinary segregation that does not itself inevitably affect the duration of the prisoner's sentence does not implicate a liberty interest entitled to procedural due process protection).

Further, "a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir.2006) (quoting *Sandin*, 515 U.S. at 484).   Plaintiff does not allege facts to show that the circumstances of his incarceration were "atypical" or that his work assignment caused him to suffer a significant hardship in relation to the ordinary incidents of prison life.  *See Sandin*, 515 U.S. at 484.

Plaintiff's due process claim(s) should be dismissed.

3. <u>Equal Protection violation</u>

Plaintiff next claims that defendant Captain Edmonds violated his Fourteenth Amendment equal protection rights by forcing him to perform medically inappropriate work, under threat of being placed in administrative segregation, on twenty-three-hour-a-day lock down.  Plaintiff alleges that Dr. McLaughlin chose inmates to work in dangerous situations

16

"just because this is a work camp," and refused to put plaintiff on any type of work restrictions, "whe[n] there are others with less disabilities." (Compl., at 15) Plaintiff further alleges that the members of the BVCF job board, who are not named defendants in this action, deprived him of equal protection under the laws, by not assigning him to a job consistent with his disabilities. (*Id.* at 16)

The Equal Protection Clause prohibits the government from treating similarly situated individuals differently. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).   Prison officials may not discriminate against an inmate on the basis of disability in choosing whether to assign him to a prison job, or in deciding what job to assign. *Williams v. Meese*, 926 F.2d at 998.

Disabled persons are a not a suspect class for purposes of equal protection analysis; therefore, rational basis scrutiny applies. *City of Cleburne*, 473 U.S. at 442-46; *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir.1999).   Under this deferential standard of review, the court upholds a challenged prison policy or decision if it is reasonably related to a legitimate penological purpose. *Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004).

I recommend finding that plaintiff's allegations, construed liberally and together, may state a claim against Captain Edmonds for violation of plaintiff's equal protection rights. Plaintiff alleges that there are inmates who are more physically capable of performing the kitchen duties, but Edmonds compelled plaintiff to work in the kitchen under threat of being

transferred to administrative segregation if he refused.[3]  Plaintiff further alleges that other

disabled inmates are being forced to perform work that is inconsistent with their physical

abilities under the same threat.  Plaintiff asserts in his response brief that several inmates

have been "transferred, placed in administrative segregation, and placed in lock down just

this past week, for disabilities and not being able to perform their job."  (Response brief,

at 2)

Theoretically, if disabled prisoners are assigned to jobs that they are actually

physically incapable of performing and are then punished when they cannot perform the

work, those prisoners are being treated more harshly than non-disabled persons who are

physically able to perform their prison work assignments.  Such class-based discriminatory

treatment would violate the Equal Protection Clause, absent a legitimate penological

purpose for the difference in treatment.   Plaintiff does not allege that he cannot perform

his assigned work.  However, he did fall and break his toe while performing his kitchen

duties and he suffered severe pain until his duties were modified in December 2005.

Other "non-disabled" inmates do not have the same risk of injury and pain while performing

their prison jobs.  Accordingly, plaintiff may be able to state an equal protection claim

against Captain Edmonds.

I recommend  that plaintiff be allowed to amend his complaint to state additional

specific facts in support of his equal protection claim alleging class-based disability

---

[3]Although Dr. McLaughlin refused to assess plaintiff work restrictions, Dr. McLaughlin is not responsible for plaintiff's work assignment. Moreover, the job's board's failure to assign plaintiff work commensurate with his physical impairments does not, without more, show that disabled prisoners are being treated differently than non-disabled prisoners. Accordingly, I consider plaintiff's equal protection claim against Captain Edmonds only.

discrimination against defendant Captain Edmonds for the relevant period plaintiff was housed in the BVCF or the Minimum Center, up to December 2005, when plaintiff's grievance was resolved.  Plaintiff cannot assert an equal protection violation against Captain Edmonds after December 2005, without pleading specific facts to show that: Edmonds threatened to place him in administrative segregation after December 2005 for refusing/failing to perform his modified kitchen duties; other disabled workers were also threatened/placed in administrative segregation for not being able to perform their assigned jobs; and, that other non-disabled prisoners were treated differently.

Plaintiff also claims in his response brief that he was treated differently from other disabled prisoners who have been removed from their jobs in the kitchen because of their disabilities.  Plaintiff specifically refers to a Mr. Flanders, a disabled prisoner who was transferred to another facility after he fell in the kitchen.  Response, at 12. Plaintiff alleges that other disabled prisoners assigned to kitchen duties are removed or re-assigned,  but defendants refuse to re-assign plaintiff to another job.  *Id.*

If the alleged disparate treatment supporting an equal protection claim is not motivated by class-based discriminatory animus, the plaintiff must show that the action taken by the defendants "was a spiteful effort to 'get' [him] for reasons wholly unrelated to any legitimate state objective." *Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1149 (10th Cir. 2001)(quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995)).

Plaintiff has not alleged any specific facts to support a reasonable inference that Captain Edmonds harbored personal animosity towards him.   Even assuming that plaintiff's facts are sufficient to support an inference of personal animosity by Captain

19

Edmonds, plaintiff's vague factual statements do not show that plaintiff is similarly-situated to Mr. Flanders, or to any other prisoners, because plaintiff does not describe the nature of the disabilities or circumstances of the other prisoners who were removed or transferred from their kitchen duties.  Plaintiff has likewise failed to state facts to show that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Templeman v. Gunter*, 16 Fl3d 367, 371 (10th Cir. 1994).

Accordingly, plaintiff's Fourteenth Amendment equal protection claim based on allegations that plaintiff was treated differently than other disabled prisoners assigned to kitchen duties should be dismissed.

4.    Lack of Personal Participation by Ortiz, Taylor and Carochi

Defendants argue that former Director of the Department of Corrections Joseph Ortiz, Nurse Taylor and Warden Carochi should be dismissed for plaintiff's failure to allege sufficient facts to show that those defendants personally participated in the alleged constitutional violations.

Liability under 42 U.S.C. §1983 must be based on the defendant's personal participation in a constitutional deprivation.  *See Gimsley v. McKay*, 93 F.3d 676, 679 (10th Cir. 1996).  "'A supervisor is not liable under section 1983 unless an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'" *Green*, 108 F.3d at 1302 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988).  "[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).  A defendant

acting in a non-supervisory capacity may be held liable only if there is a causal connection between the conduct complained of and the constitutional deprivation.  *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990).

Plaintiff concedes that defendant Nurse Taylor did not participate in any of the alleged unconstitutional conduct and should be dismissed.  Plaintiff alleges in his response brief that defendant Ortiz, the former DOC Executive Director, was responsible to ensure that all DOC inmates were afforded proper medical care.   However, plaintiff does not allege any facts to show that defendant Ortiz knew about the alleged constitutional deprivations, much less that Ortiz personally participated in them.

Plaintiff does not allege that Warden Carochi "authorized, supervised, or participated in conduct *which caused* the [alleged Eighth Amendment violation]."  *Snell* , 920 F.2d at  700  (Emphasis supplied).   Instead, Plaintiff seeks to hold the Warden liable for failing to respond to plaintiff's letter to him, dated December 13, 2005, complaining that the defendants were forcing him to perform medically inappropriate work, refused to facilitate his re-assignment to work consistent with his disabilities, and failed to impose proper medical restrictions based on an independent medical evaluation.

 A supervisory official may be liable for constitutional deprivation if he "learned of the violation through a report or appeal" and "failed to remedy the wrong." *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986); *see, also*, *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition").

Here, the pleadings reflect that after plaintiff wrote to Warden Carochi in December 2005, the issue was resolved by Major Brunell to plaintiff's satisfaction during the grievance procedure, in late December 2005 and early January 2006. Because plaintiff does not state facts to show that he advised Warden Carochi of an ongoing Eighth Amendment violation after January 2006, plaintiff has failed to state facts demonstrating that the Warden knew about or personally participated in the alleged constitutional violation.

Further, plaintiff's allegations that Warden Carochi failed to properly supervise or train his staff are insufficient. A prison official cannot be held liable under §1983 merely because of his general supervisory authority. *Jenkins*, 81 F.3d at 994.

Accordingly, I recommend that defendants Taylor, Ortiz and Carochi be dismissed.

IV.

For the reasons discussed above, it is

**RECOMMENDED** that Defendants' Motion to Dismiss [Doc. #17; filed December 4, 2006] be **GRANTED** in substantial part, and denied in part, as follows:

(1) Plaintiff's official capacities claims against the defendants for monetary relief should be DISMISSED; plaintiff's Eighth Amendment claims against defendants Nurse Taylor, Lt. Gillespi, Case Manager Cathy Pfalzgraph, P.A. Roberts, P.A. Wriggley, Warden Tony Carochi, and Joseph Ortiz, former DOC executive director, should be DISMISSED; plaintiff's Fourteenth Amendment due process claim should be DISMISSED; plaintiff's Fourteenth Amendment equal protection claim based on allegations that plaintiff was treated differently than other disabled prisoners assigned to the kitchen should be DISMISSED; and,

(2) Defendants Nurse Taylor, Lt. Gillespi, Case Manager Cathy Pfalzgraph, P.A. Roberts, P.A. Wriggley, Warden Tony Carochi, and Joseph Ortiz, [former] Executive Director of DOC, should be DISMISSED.  It is

**FURTHER RECOMMENDED** that plaintiff be allowed to amend his complaint within thirty (30) days after an Order is entered on the Recommendation to: include additional facts in support of his Fourteenth Amendment equal protection claim asserting class-based disability discrimination against defendant Captain Edmonds; add a claim under Title II of the ADA; and, to add the Colorado Department of Corrections as a defendant.

The claims remaining if this Recommendation is adopted are: Plaintiff's  §1983 Eighth Amendment claim against defendants Captain Edmonds and Dr. McLaughlin and Fourteenth Amendment equal protection claim asserting class-based disability discrimination against Captain Edmonds; and, a Title II ADA claim against the Colorado Department of Corrections (if plaintiff files an amended complaint).

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated June 11, 2007.

BY THE COURT:

s/ O. Edward Schlatter
O. EDWARD SCHLATTER
United States Magistrate Judge