IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-01612-DME-KLM

JERRY GRADY,

     Plaintiff,

v.

CAPTAIN EDMONDS,
DR. McLAUGHLIN, and
CATHIE HOLST,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment** [Docket No. 113; Filed August 22, 2008] (the "Motion").  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo.L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation.  The Court has reviewed the Motion, Plaintiff's Response [Docket No. 121; Filed October 6, 2008], the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

## I.    Statement of the Case

At the time of filing, Plaintiff was incarcerated at the Buena Vista Correctional Facility ("BVCF") by the Colorado Department of Corrections ("CDOC").  The BVCF is the main

1

facility of the Buena Vista Correctional Complex ("BVCC"), which includes both the BVCF and the Buena Vista Minimum Center ("BVMC"). *Motion* [#113] at 2. On August 15, 2006, Plaintiff filed his *pro se* Complaint pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, and that Defendant Edmonds deprived him of equal protection of the law when Defendant Edmonds forced him to perform work that was beyond his physical capabilities [Docket No. 3].

The following facts are essentially undisputed for purposes of this motion. Prior to his incarceration with the CDOC, Plaintiff suffered severe, permanent injuries to his feet after falling 45-feet in a work-related injury. *Complaint* [#3] at 3. When Plaintiff entered the BVCF in December of 2003, he alleges that he received a "special project" work assignment, which required him to fill pepper shakers and place napkins in paper cups in the dining room. *Id.* at 5. Plaintiff was also permitted to sit down while performing his job duties. *Id.* Defendant Edmonds was the Food Services Captain for the entire BVCC from October 2000 to August 2005. *Motion* [#113] at 3. Sometime after August of 2004, Plaintiff alleges that Defendant Edmonds informed him that "special project" work assignments were being eliminated, and that Plaintiff would therefore be re-assigned to a regular kitchen job. *Complaint* [#3] at 5. Plaintiff was therefore assigned to work in the BVCF kitchen from March 17, 2004 until December 28, 2004. *Motion* [#113] at 3. Plaintiff alleges that Defendant McLaughlin changed his medical work restrictions which he had received at the CDOC Diagnostic Center, at Defendant Edmonds' request without first examining Plaintiff.

*Complaint* [#3] at 5.

Following his re-assignment, Plaintiff alleges that he was required to carry heavy kitchen pots and pans across a "wet and greasy floor" as part of his kitchen assignment. *Id.* When Plaintiff informed Defendant Edmonds that his new kitchen duties caused him extreme pain and violated his documented medical restrictions, Defendant Edmonds allegedly responded "your restrictions are changed" and that Plaintiff could "work [his] job or go to segregation." *Id.* Plaintiff alleges that Defendant Edmonds knew that Plaintiff was disabled, but forced him to perform work that was beyond his physical capabilities and caused Plaintiff severe pain. *Id.* at 8. Plaintiff seeks damages in addition to injunctive relief. *Id.* at 36.

By Recommendation dated June 11, 2008, Magistrate Judge Schlatter recommended that Plaintiff's official capacity claims be dismissed, that Plaintiff's Eighth Amendment claims against every Defendant except Defendants Edmonds and McLaughlin be dismissed, that Plaintiff's due process claim be dismissed, and that Plaintiff be allowed to amend his complaint to state additional specific facts in support of his equal protection claims alleging class-based disability discrimination against Defendant Edmonds only. *Recommendation* [#37] at 9-20. Magistrate Judge Schlatter also recommended that Plaintiff be allowed to amend his Complaint to assert an Americans with Disabilities Act ("ADA") claim and to add the Department of Corrections as a defendant. *Id.* at 8. By Order dated October 10, 2007, District Judge Ebel adopted Magistrate Judge Schlatter's Recommendation in full, granting Plaintiff the opportunity to amend his complaint to both

assert an ADA claim and provide more specific allegations regarding his equal protection claim against Defendant Edmonds. *Order* [#49] at 3. Therefore, as of October 10, 2007, Plaintiff's remaining claims were an Eighth Amendment claim against Defendants Edmonds and Mclaughlin, and a Fourteenth Amendment equal protection claim against Defendant Edmonds. *Order* [#49] at 3.

On January 2, 2008, Plaintiff filed a document titled "Plaintiff's Claims of Eighth Amendment and Deliberately Indiffern [sic] Violations." [Docket No. 71]. During the Scheduling Conference held on March 11, 2008, the Court deemed this document to be an Amended Complaint [Docket No. 86]. Plaintiff's Amended Complaint [#71] contains additional allegations regarding Defendant Edmonds, but does not appear to include an ADA claim nor does it add the CDOC as a Defendant.[1] In light of Plaintiff's *pro se* status, the Court will consider the additional allegations against Defendant Edmonds provided in Plaintiff's Amended Complaint, as well as his original allegations.

## II.     Discussion

### A.     Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

In ruling on a motion for summary judgment, the facts must be viewed in the light

---

[1]The Court notes that the Amended Complaint also contains many allegations regarding Lt. Gillespie, a Defendant who was dismissed from this case by District Judge Ebel's October 10, 2007 Order. *See Order* [#49] at 3. Accordingly, the Court will not address Plaintiff's additional allegations against Lt. Gillespie. The Amended Complaint also lists Cathie Holst as a Defendant, but does not contain any allegations related to Cathie Holst, who has not been served or waived service of process in this case. The Court will also recommend that the claims against Cathy Holst be dismissed, as set forth below.

most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating, by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Id.* at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).  This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."  *Id.*

## B.     Analysis

This action is brought pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### 1.     Failure to Exhaust the Equal Protection Claim

Defendants first argue that Plaintiff's equal protection claim against Defendant Edmonds is barred by Plaintiff's failure to exhaust his administrative remedies.  *Motion* [#113] at 8.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted at the facility level before a prisoner may challenge those conditions in federal court.  Specifically, the exhaustion provision provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  "There is no question that exhaustion is mandatory under the PLRA

and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199,

___, 127 S. Ct. 910, 918-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion

is no longer left to the discretion of the district court, but is mandatory."). However, the

burden is not on the plaintiff to sufficiently plead exhaustion or attach exhibits proving

exhaustion. *Jones*, 127 S. Ct. at 921. Rather, the burden is on the defendants to assert

a failure to exhaust in their dispositive motion. *Id.* Moreover, in *Woodford,* 548 U.S. at 83,

the Supreme Court held that exhaustion is accomplished only when a prisoner files

grievances that comply with all of the procedural rules attached to the grievance procedure

by the prison. The *Woodford* court discussed the benefits of requiring full and proper

exhaustion, including allowing the prison to correct errors before they lead to litigation, and

creating a clear record of recent events that might facilitate later litigation. *Id.* at 89. The

Court further explained that "the benefits of exhaustion can be realized only if the prison

grievance system is given a fair opportunity to consider the grievance." *Id.* at 95.

As a preliminary matter, the facility is tasked with the responsibility of establishing

grievance procedures. *Jones*, 127 S. Ct. at 923 ("[I]t is the prison's requirements, not the

PLRA, that define the boundaries of proper exhaustion."). "Compliance with prison

grievance procedures, therefore, is all that is required by PLRA to 'properly exhaust.'"

*Baldauf v. Garoutte*, 2007 WL 2697445, at *4 (D. Colo. Sept. 11, 2007) (unpublished

decision) (citing *Jones*, 127 S. Ct. at 922-23). Here, the CDOC grievance procedures and

methods for tracking filed grievances are set forth in Administrative Regulation 850-04 ("AR

850-04"). *Motion* [#113] at Ex. A-4, p. 6. AR 850-04 requires that inmates first attempt to

resolve any issue by filing a Step 1 grievance form. *Id.* at 10. If the inmate is not satisfied with the remedy provided after the Step 1 grievance, he must then file a Step 2 grievance and likewise file a Step 3 grievance if he is not satisfied with the response to his Step 2 grievance. *Id.* The Step 3 grievance is the final step in the CDOC grievance process. Once the inmate has received a response to his Step 3 grievance, he has fully exhausted his administrative remedies. *Id.* Finally, pursuant AR 850-04(IV)(B)(3)(b), "[a]ll issues and remedies contained in the original grievance must be incorporated into each subsequent step of the grievance. Failure to renew each element of the complaint and/or requested relief in subsequent steps shall be deemed a waiver of those elements and/or requested remedy." *Id.* at 9.

The moving party bears the initial burden, by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, to demonstrate the absence of genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 325. In order to meet their initial burden, Defendants have provided the affidavit of Anthony Decesaro, employed by the CDOC as a Step 3 grievance officer. *Motion* [#113] at Ex. A-4. Mr. Decesaro attests that he has reviewed the records of the grievances filed by Plaintiff and that he "could not . . . find any Step 3 grievance filed by [Plaintiff] in which he alleged that [Defendant] Edmonds, or any other Food Services staff member, treated disabled inmates differently than non-disabled inmates." *Id.* at 2. Mr. Decesaro acknowledges that a grievance filed by Plaintiff on September 26, 2005 and provided the tracking number of BM 05/06-13, mentions Captain Edmonds and his allegedly discriminatory treatment of

Plaintiff. *Id.* Plaintiff filed Step 2 and 3 grievances related to BM 05/06-131, but Mr. Decesaro states that neither grievance contained allegations related to Defendant Edmonds allegedly discriminatory or threatening behavior. *Id.* Accordingly, Defendants argue that Plaintiff has waived this issue pursuant to AR 850-04(IV)(B)(3)(b), and therefore has not exhausted his administrative remedies with regard to his equal protection claim. *Id.* at 4.

The Court must examine the grievances at issue to determine whether Plaintiff has adequately exhausted this issue in accordance with CDOC policy. On September 26, 2005, Plaintiff filed a Step 1 grievance, that was provided the grievance number "BM 05/06-131" by CDOC staff. *Complaint* [#3] at 23. In this grievance, Plaintiff stated "Captain Edmonds over zealous [sic] and behavior towards handicap [sic] is well known. . . .The administration knowing that I am a disable [sic] person and making me work in a dangerous environment, they are doing this with malice of forethought [sic]. To have me work in the kitchen again on slippery floors, knowing what injuries I have had in the past is unreasonable. . . ." *Id.* This Step 1 grievance was denied by DOC staff on October 15, 2005. *Id.* On October 25, 2005, Plaintiff filed a Step 2 grievance in relation to BM 05/06-131. *Id.* at 25. In this Step 2 grievance he stated, *inter alia*, "I feel that there is [sic] plenty of able bodied persons that can work the kitchen without having a person that can barely walk." *Id.* On December 13, 2005, Plaintiff filed a Step 3 grievance in relation to BM 05/06-131. *Motion* [#113] at Ex. A-4, p. 19. In this Step 3 grievance, he stated, *inter alia*, "[t]he job board should have never assigned me to a job that I have fallen before if they took that

into consideration. . . . I simply do not wish to work in a dangerous situation nor on my feet for hours." *Id.* The Step 3 grievance was denied by CDOC staff on August 3, 2006. *Id.* at 20.

Although Plaintiff does not specifically reference an equal protection claim in his Step 1 grievance form, the court is required to liberally review the pleadings of *pro se* litigants. *See Hall*, 935 F.2d at 1110; *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004) (prisoner "need not present legal theories in his grievance"); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) (a prisoner is not required to "allege a specific legal theory . . . that correspond[s] to all the required elements of a particular legal theory."). Here, construing Plaintiff's Step 1 grievance liberally, it appears that Plaintiff expressed his intent to assert discriminatory practices by Defendant Edmonds against the disabled prison population. *See Complaint* [#3] at 23. However, Plaintiff's Step 2 and Step 3 grievances do not contain allegations related to Defendant Edmonds or any allegedly discriminatory practice. *Id.* at 25; *Motion* [#113] at Ex. A-4, p. 19. Instead, the allegations contained in Plaintiff's Step 2 and Step 3 grievances appear to be generally related to his requests that he be provided a different job assignment. Therefore, while Plaintiff may have initially attempted to grieve a discriminatory practice by Defendant Edmonds against inmates with disabilities, he did not pursue these allegations in his Step 2 and Step 3 grievances. Accordingly, pursuant to the CDOC grievance policy, Plaintiff waived the issue of Defendant Edmond's discriminatory practices by not raising this in his Step 2 and Step 3 grievances, and this issue was not properly exhausted. *See* AR 850-04(IV)(B)(3)(b);

*Woodford,* 548 U.S. at 83.

The party opposing the motion is required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. However, other than his unsupported and unsworn statement that "all the issues [Plaintiff] has raised in this action have been previously addressed via the proper administrative process," Plaintiff has failed to present any evidence upon which he can dispute Defendants' evidence and thus create a genuine issue of material fact that would preclude summary judgment. *Response* [#121] at 10; *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2nd Cir. 1998) (holding that the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful") (citations omitted); *see also Anderson*, 477 U.S. at 250 ("when a properly supported motion for summary judgment is made, the adverse party 'must set forth *specific facts* showing that there is a genuine issue for trial.'") (emphasis provided). The Court has reviewed all of the grievances submitted by Plaintiff, and can find no evidence that Plaintiff has properly exhausted his equal protection claim against Defendant Edmonds as required by the PLRA, 42 U.S.C. § 1997e. Therefore, the Court finds that "no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." *Southway*, 149 F. Supp. 2d at 1273. Accordingly, the Court respectfully **RECOMMENDS** that the Motion [#113] be **GRANTED** and that Plaintiff's equal protection claim against Defendant Edmonds be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust

administrative remedies.

## 2. Deliberate Indifference Claims

Defendants next argue that Plaintiff has failed to prove that either Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *Motion* [#113] at 11.

The Eighth Amendment is violated when a prison official acts with "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Eighth Amendment also applies to deliberate indifference by prison officials to an inmate's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* (citation omitted). In the medical context, deliberate indifference means that prison medical staff knew of the inmate's serious medical need, but intentionally disregarded an excessive risk of harm to the inmate, or that prison guards or medical staff intentionally prevented the inmate from receiving prescribed treatment or intentionally delayed or denied him access to medical care. *Id.* at 104-05; *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001); *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Eighth Amendment claims alleging inadequate medical care "involve both an objective and a subjective component, such that we must determine both whether the deprivation is sufficiently serious and whether the [government] official acted with a sufficiently culpable state of mind." *Oxendine*, 241 F.3d at 1276 (internal quotation marks and citation omitted). That is, first

the medical condition complained of must be sufficiently serious, such that "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).  Second, to satisfy the subjective component, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  That is, "[i]t is obduracy and wantonness . . . that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause. . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### A. Defendant McLaughlin

Plaintiff must first prove that, objectively, that his medical condition is sufficiently serious, such that "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt*, 199 F.3d at 1224.  Defendants concede that Plaintiff's foot deformities and chronic pain constitute a sufficiently serious medical need. *Motion* [#113] at 11.  Therefore, Plaintiff must only prove that Defendant McLaughlin knew of Plaintiff's serious medical need, but intentionally disregarded an excessive risk of harm to Plaintiff.  *Oxendine*, 241 F.3d at 1279.  That is, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Plaintiff states that Defendant "McLaughlin violated my rights and was Deliberate Indifferent [sic] to me as he is in charge

of the medical restrictions and the level of and raised my restrictions, not by medical evaluations, but by the request of Captain Edmonds." *Complaint* [#3] at 9. Plaintiff also states that Defendant McLaughlin "refused to look into the Plaintiff's documented proof that he sent for from 'the streets' and by doing so placed this Plaintiff in a painful situation by not investagating [sic] or for that matter caring about the pain and suffering it was causing him working on his feet for eight hours at a time." *Id.* at 13.

Although Plaintiff claims that Defendant McLaughlin failed to properly evaluate his condition, or even refused to examine him at all, Defendants have provided Plaintiff's prison medical records, which indicate the prison's medical staff saw Plaintiff frequently. *Motion* [#113] at Ex. A-2, pgs. 14-56. In addition, these records demonstrate that Plaintiff has received pain medication, cortisone steroid injections and special shoes and custom-made inserts to help with pain relief. *Id.* at 4-5. In his affidavit, Defendant McLaughlin states that Plaintiff "has had multiple medical restrictions through his incarceration at BVCC. I did not eliminate [Plaintiff's] medical restrictions. To the contrary, I clarified that [Plaintiff] did have multiple medical restrictions." *Id.* at 7. The medical records submitted by Defendants illustrate that many medical restrictions were put in place for Plaintiff, including no prolonged standing, no prolonged sitting, and no heavy lifting, and that these medical restrictions were evaluated and changed as needed. *See id.* at 28, 52-55. Defendant McLaughlin also states that he contacted Plaintiff's work supervisor in order to explain Plaintiff's restrictions, and the supervisor assured him that Plaintiff had been assigned job duties within his medical work restrictions. *Id.* at 9-10. Defendant McLaughlin attests that

14

"[a]ll of [his] determinations regarding [Plaintiff's] medical restrictions were based on [his] objective evaluation of [Plaintiff's] medical conditions and needs," and that "[i]n [his] medical opinion, [Plaintiff's] medical restrictions were appropriate." *Id.* at 11. Finally, he attests that "[i]n [his] medical opinion, [Plaintiff] received excellent medical care . . . . [his] conduct and treatment decisions regarding [Plaintiff] were appropriate and satisfied the community standard of care. [He] never knowingly disregarded any threat to [Plaintiff's] health or safety." *Id.* at 11-12. Further, while Plaintiff has alleged that Defendant McLaughlin changed his medical restrictions based upon the request of Defendant Edmonds, beyond his conclusory allegations, Plaintiff has not shown that he has any personal knowledge or other evidence that Defendant Edmonds asked Defendant McLaughlin to change or remove any of Plaintiff's work restrictions. Indeed, both Defendants specifically deny that this ever happened. *Motion* [#113] at Ex. A-2, p. 11; Ex. A-3, p. 6.

Therefore, Plaintiff has presented nothing more than a disagreement with Defendant McLaughlin's medical opinions and the medical restrictions issued for Plaintiff, which by itself is not sufficient to state a claim for § 1983 relief. *See Estelle*, 429 U.S. at 107-08; *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999). That is, it is quite clearly established that "[a] difference of opinion between a physician and patient does not give rise to a constitutional right or sustain a claim under § 1983." *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968); *see also Ramos*, 639 F.2d at 575 (holding "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual

punishment.").

The party opposing a  motion for summary judgment is required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.  Plaintiff cannot merely rest upon the allegations contained in his Complaint and must instead respond with specific evidence showing the existence of a genuine factual issue to be tried.  *Southway*, 149 F. Supp. 2d at 1273 (citations omitted).  "These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* (citation omitted).  Plaintiff has alleged, and Defendants do not dispute, that he suffered from a serious foot deformity. Nor is there any dispute that prison officials knew about Defendant's foot condition. However, Plaintiff has failed to establish that Defendant McLaughlin, in treating Plaintiff's medical condition, disregarded an excessive risk to his health or safety.   Defendant McLaughlin has presented evidence refuting Plaintiff's allegations that he was deliberately indifferent to Plaintiff's serious medical needs.  Indeed, the undisputed evidence shows that the medical staff saw Plaintiff on a regular basis and diligently provided medical care.  *See, e.g., Motion* [#113] at Ex. A-2, pgs. 14-56.   There is no evidence that Defendant McLaughlin intentionally disregarded an excessive risk of harm to Plaintiff.  *Oxendine*, 241 F.3d at 1279.   Plaintiff has failed to present any evidence outside his unsupported allegations disputing Defendants' evidence and thus creating a genuine issue of material fact that would preclude summary judgment. *See, e.g.*, *D'Amico*, 132 F.3d at 149 (holding that the party opposing summary judgment "may not rely on mere conclusory allegations

nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"); *see also Anderson*, 477 U.S. at 250 ("when a properly supported motion for summary judgment is made, the adverse party 'must set forth *specific facts* showing that there is a genuine issue for trial.'") (emphasis provided).  Therefore, the Court finds that "no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response."  *Southway*, 149 F. Supp. 2d at 1273.

Accordingly, the Court respectfully **RECOMMENDS** that the Motion [#113] be **GRANTED** and that Plaintiff's Eighth Amendment claim against Defendant McLaughlin be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 56.

### B.    Defendant Edmonds

Defendants have conceded that Plaintiff's foot deformities and chronic pain constitute a sufficiently serious medical need.  *Motion* [#113] at 11. Therefore, Plaintiff must only prove that Defendant Edmonds knew of Plaintiff's serious medical need, but intentionally disregarded an excessive risk of harm to Plaintiff.  *Oxendine*, 241 F.3d at 1279.  To do this, Plaintiff must show that Defendant Edmonds was "both . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he . . . also [drew that] inference."  *Farmer*, 511 U.S. at 837.

The moving party bears the initial burden, by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, to demonstrate the absence of genuine issues of material fact.  *Celotex Corp.*, 477 U.S. at 325.  In order to meet their initial burden, Defendants have provided the affidavit of

Defendant Edmonds. *Motion* [#113] at Ex. A-3. In his affidavit, Defendant Edmonds attests that he did not "direct Grady to exceed his medical work restrictions as determined by Clinical Services . . . " *Id.* at 7. He states that he "was not involved in assigning specific job duties to specific inmate workers," and that he "never authorized Food Services staff to direct [Plaintiff] to exceed his medical work restrictions." *Id.* at 2, 7. He further attests that "[a]n offender's medical restrictions are determined solely by Clinical Services . . . . Food Services simply follows the medical work restrictions as determined by Clinical Services." *Id.* at 4. Defendant Edmonds attests that he "never eliminated or changed any of [Plaintiff's] medical work restrictions," and that he "never asked or ordered [Defendant McLaughlin] to change or eliminate any of [Plaintiff's] medical restrictions." *Id.* at 6. Finally, Defendant Edmonds attests that "Food Services assigns job duties which are within an offender's medical work restrictions as determined by Clinical Services. . . . The goal is to find job assignments for each offender which are within the offender's medical restrictions as determined by Clinical Services." *Id.* at 3. The evidence submitted by Defendants demonstrates that Plaintiff's medical work restrictions were determined by Clinical Services, and that Defendant Edmonds worked within these restrictions when determining Plaintiff's job duties.

As Defendants have met their initial burden, Plaintiff is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 325. That is, Plaintiff must point to evidence showing that Defendant Edmonds both knew of Plaintiff's serious medical need, and then

intentionally disregarded an excessive risk of harm to Plaintiff. *Oxendine*, 241 F.3d at 1279. Plaintiff cannot merely rest upon the allegations contained in his Complaint and must instead respond with specific evidence showing the existence of a genuine factual issue to be tried. *Southway v. Cent. Bank of Nigeria*, 149 F. Supp. 2d 1268, 1273 (D. Colo. 2001) (citations omitted). "These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* (citation omitted).

As a preliminary matter, the Court notes that Plaintiff's Amended Complaint [#71] and Response [#121] do not make any reference to any of the statements asserted therein as being attested under oath, as required by Fed. R. Civ. P. 56(e). Therefore, Plaintiff's unsworn statements regarding Defendant Edmonds are not sufficient to create a genuine issue as to any material fact, and they need not be considered by this Court. *See, e.g.*, *Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (holding that unsworn statements did not warrant the grant of summary judgment); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (holding that a notarized affidavit which is "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury . . . is incompetent to raise a fact issue precluding summary judgment"); *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 641 (D.Colo. 2006) (finding that courts "need not consider evidence that does not conform to [the] requirements" of Fed. R. Civ. P. 56(e).

However, as Plaintiff has submitted his Complaint sworn under penalty of perjury [#3 at 39], the Court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n.1

(10th Cir. 1997); *see also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."). "Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would be admissible at trial, and show that the affiant is competent to testify on the matters stated therein." *Conaway*, 853 F.2d at 792. Where the court treats a verified complaint as an affidavit, whether this affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.'" *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. GMC*, 770 F.2d 984, 986 (11th Cir. 1985)). Indeed, "there may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . ., especially when the allegations contained in the pleading are merely conclusory." *Conaway*, 853 F.2d at 792-93; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990) (finding that an affidavit merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment). "Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." *Southway*, 149 F. Supp. 2d at 1273. That is, Plaintiff must present evidence that is "based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." *Id.*

at 1274 (quotation omitted). Plaintiff alleges that, after his special work project was eliminated, he informed Defendant Edmonds that he was in "extreme pain," and that Defendant Edmonds responded that Plaintiff's work restrictions were changed, and that Plaintiff would "work [his] job or go to segregation." *Complaint* [#3] at 5. He also alleges that Defendant Edmonds "was Deliberate Indifferent [sic] to me by placing me in a working condition and not caring or taking consideration [sic] my disabilities and the previous injuries I incured [sic] under his supervision." *Id.* at 8. He finally alleges that Defendant Edmonds ordered Defendant McLaughlin to "raise [sic] the Plaintiff's [medical work] restrictions." *Id.* at 11.

While Plaintiff alleges that Defendant Edmonds forced Plaintiff to work beyond his medical restrictions and ordered that his medical restrictions be changed, he has not offered any evidentiary support for these bare assertions. Further, the evidence presented demonstrates that Defendant Edmonds was aware of Plaintiff's existing medical restrictions, and directed his staff to work within those restrictions. *See, e.g., Motion* [#113] at Ex. A-3, pgs. 2-7. The absence of any evidence relevant to Plaintiff's burden here, other than Plaintiff's conclusory allegation that Defendant Edmonds was deliberately indifferent to Plaintiff's suffering and ordered Defendant McLaughlin to change his medical restrictions, is insufficient to create a genuine issue of material fact. *See, e.g.*, *D'Amico*, 132 F.3d at 149 (holding that the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"); *see also Anderson*, 477 U.S. at 250 ("when

a properly supported motion for summary judgment is made, the adverse party 'must set forth *specific facts* showing that there is a genuine issue for trial.'") (emphasis provided).

Accordingly, I find that "no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." *Southway*, 149 F. Supp. 2d at 1273. As such, I respectfully **RECOMMEND** that the Motion [#113] be **GRANTED** and that Plaintiff's Eighth Amendment claim against Defendant Edmonds be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 56.

### 3. Defendant Cathie Holst

Plaintiff lists Cathie Holst as a Defendant, sued in her individual and official capacity. in his Amended Complaint. *See Amended Complaint* [#71] at 1. Through an inadvertent omission by the Court, Cathie Holst was never served in this action, and no attorney has entered an appearance on her behalf. Nonetheless, the Court has reviewed the allegations against Cathie Holst (or lack thereof) and determined that any claims against Ms. Holst should be dismissed. Plaintiff's sole allegation related to Cathie Holst in his Amended Complaint is the following: "How many grievances and Civil Actions has Cathie Holst had file [sic] against her in the past 4 year [sic]." *Amended Complaint* [#71] at 7. Other than this, Plaintiff makes no claims related to Cathie Holst. Pursuant to 28 U.S.C. § 1915(e)(2), "the court shall dismiss the case at any time if the court determines that - - . . . (B) the action or appeal - - (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Because Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915, this subsection applies to his case [Docket No. 2; Filed August 15, 2006].

To the extent that Plaintiff attempts to sue Defendant Holst in her official capacity, he actually attempts to impose liability on her employer, the State of Colorado. *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A defendant in her official capacity is immune from claims for monetary and declaratory relief pursuant to the Eleventh Amendment. *See White v. State of Colorado*, 82 F.3d 364, 366 (10th Cir. 1996); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state officials acting in their official capacities are not "persons" subject to suit pursuant to 42 U.S.C. § 1983). Accordingly, the Court respectfully **RECOMMENDS** that Plaintiff's claims for damages against Defendant Holst in her official capacity be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), as Plaintiff seeks monetary relief from an official who is immune from such relief.

To the extent that Plaintiff attempts to sue Defendant Holst in her individual capacity, the Complaint must allege facts showing that Defendant Holst personally participated in the alleged constitutional violation. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based upon personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). Therefore, a defendant may not be held liable merely because of her supervisory position. *Grimsley v. MacKay*, 93 F.3d

676, 679 (10th Cir. 1996).  Instead, there must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise.  *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).  Based upon the complete lack of details regarding Plaintiff's claims against Defendant Holst in his Amended Complaint, Plaintiff has failed to plead sufficient facts to demonstrate that Defendant Holst had any personal participation in or any supervisory liability for the alleged violation of Plaintiff's constitutional rights. Accordingly, the Court respectfully **RECOMMENDS** that Plaintiff's claims against Defendant Cathie Holst in her individual capacity be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

## III.    Conclusion

As set forth above, I respectfully **RECOMMEND** that  Defendants' **Motion for Summary Judgment** [Docket No. 113; Filed August 22, 2008] be **GRANTED** and that Plaintiff's equal protection claim be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiff's Eighth Amendment claim against Defendant McLaughlin and Defendant Edmonds be **DISMISSED WITH PREJUDICE**.

I further **RECOMMEND** that Plaintiff's claims against Defendant Cathie Holst be **DISMISSED WITH PREJUDICE** pursuant to  28 U.S.C. § 1915(e)(2)(B)(ii) & (iii).

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R.

Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: October 30, 2008